# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MARIE WIMBERLY,** *Administrator of the Estate of Vivian Wilson (deceased)* | Case No. 1:21-cv-02097-PAB (lead) 1:21-cv-02126-PAB |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **MONTEFIORE, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

Currently pending is Plaintiff Marie Wimberly's, Administrator of the Estate of Vivian Wilson (deceased), Motion for Remand. (Doc. No. 13.) Defendants Montefiore, The Montefiore Home, The Montefiore Foundation, The Montefiore Housing Foundation, and The Menorah Park Foundation ("the Facility Defendants") filed a Memorandum in Opposition to Wimberly's Motion on December 14, 2021, which Defendants Tina King and Marie Gelle joined. (Doc. Nos. 16, 17.) Also on December 14, 2021, Defendant Ariel Hyman filed a separate Memorandum in Opposition, which is substantively identical to the Facility Defendants' Opposition. (Doc. No. 18.) Wimberly filed a Reply in Support of her Motion on December 20, 2021. (Doc. No. 19.) All Defendants filed a Joint Sur-Reply on December 28, 2021. (Doc. No. 20-1.)

Also pending is the Facility Defendants' Motion for Leave to File Declaration *Instanter*, filed on January 6, 2022, in response to Wimberly's Notice of Supplemental Authority, filed December 29, 2021. (Doc. Nos. 22, 21.) Wimberly filed an Opposition to the Facility Defendants' Motion for Leave on January 12, 2022. (Doc. No. 23.)

For the following reasons, Wimberly's Motion for Remand is GRANTED and Defendants' Motion for Leave to File Declaration *Instanter* is DENIED.

**I.     Background**

    **A.     State Court Complaint**

On October 4, 2021, Wimberly filed a Complaint against Defendants in Cuyahoga County Court of Common Pleas, alleging two claims: a survival claim and a wrongful death claim. (Doc. No. 1-2, ¶¶ 1-34, 35-40.) In her Complaint, Wimberly alleges that her mother, Vivian Wilson, was admitted to Montefiore, a nursing home facility operated by the Facility Defendants, on September 6, 2020 after undergoing knee replacement surgery. (*Id.* at ¶¶ 2-4, 11.) Defendant Hyman acted as the administrator for the facility. (*Id.* at ¶ 4.) King and Gelle, both licensed nurses, worked at the facility. (*Id.* at ¶¶ 5-6.)

    Wimberly alleges that Wilson tested negative for COVID-19 prior to her discharge from University Hospitals. (*Id.* at ¶ 12.) She further alleges that Wilson was told she had been tested for COVID-19 and that her test result was negative before she was discharged from Montefiore. (*Id.* at ¶ 13.) However, Wilson alleges, Defendants "falsified the test result." (*Id.*) Shortly after her discharge from the facility, Wilson experienced trouble breathing and was admitted to Ahuja Medical Center, where she was diagnosed with an advanced case of COVID-19. (*Id.* at ¶ 15.) Wilson died shortly thereafter, as a result of COVID-19. (*Id.* at ¶ 16.)

Wimberly alleges that Defendants "negligently, recklessly, and with malicious intent conduct[ed] improper testing and falsif[ied] tests," and that Defendants "intentionally hid the fact that other patients and/or residents of Montefiore" had COVID-19. (*Id.* at ¶ 17.) She further alleges that Defendants' actions "show[ed] a lack of care so great that it is a conscious indifference to the rights of others and gross and willful negligence" and acted "with intentional misconduct or willful or wanton misconduct." (*Id.* at ¶ 19.) Wimberly alleges that Defendants failed to provide proper

infection control and prevention measures, quarantine procedures, and testing, failed to properly provide medical services, and failed to provide appropriate staffing. (*Id.* at ¶¶ 24-30.)

    **B.**    **Notices of Removal**

On November 5, 2021, the Facility Defendants removed this action from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio. (Doc. No. 1.) In their Notice of Removal, the Facility Defendants asserted that the case was removable under 28 U.S.C. § 1441(a) pursuant to the Court's original federal jurisdiction under 28 U.S.C. § 1331. (Doc. No. 1, ¶ 4.) The Facility Defendants claimed that, on its face, Wimberly's action arose under the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d (the "PREP Act") and claimed that the PREP Act completely preempted Wimberly's state law claims. (*Id.* at ¶¶ 5-9.) The Facility Defendants' counsel conferred with King's, Gelle's, and Hyman's counsels regarding removal, and King, Gelle, and Hyman all consented. (*Id.* at ¶ 12.)

On November 8, 2021, three full days after the Facility Defendants removed this action to this Court, Defendant Hyman separately removed this action again to this Court. On November 12, 2021, the Court consolidated Hyman's separately-removed case with the Facility Defendants' case in the interest of convenience to the parties and economy in judicial administration. (*See* ECF Entry 11/12/2021.) In his Notice of Removal, Hyman reasserts the same argument regarding removal under 28 U.S.C. § 1441(a) as set forth in the Facility Defendants' Notice of Removal. (*See* Case No. 1:21-cv-02126-PAB, Doc. No. 1, ¶ 4.) Hyman's Notice of Removal also includes a single reference to 28 U.S.C. § 1442(a), the federal officer removal statute, but no argument associated therewith. (*Id.* at ¶ 12, "Original jurisdiction is also through an action pursuant to 28 U.S.C. § 1442(a)(1).")

3

### C. Motion for Remand

On November 30, 2021, Wimberly filed a Motion for Remand. (Doc. No. 13.) The Facility Defendants filed an Opposition on December 14, 2021, in which King and Gelle joined. (Doc. No. 16, 17.) Hyman filed a separate Opposition on December 14, 2021, although his Opposition is nearly identical to the Facility Defendants' Opposition. (Doc. No. 18.) Wimberly filed a Reply in Support of her Motion on December 20, 2021. (Doc. No. 19.) Thereafter, all Defendants filed a Joint Sur-Reply on December 27, 2021. (Doc. No. 20-1.)

On December 29, 2021, Wimberly filed a Notice of Supplemental Authority. (Doc. No. 21.) On January 6, 2022, the Facility Defendants filed a Response to Wimberly's Supplemental Authority, as well as a Motion for Leave to File Declaration *Instanter*. (Doc. No. 22.) The Facility Defendants seek to file the Declaration of former facility Chief Operating Officer Richard Schwalberg to refute certain analyses set forth in Wimberly's Supplemental Authority. (*Id.*) Wimberly filed an Opposition to the Facility Defendants' Motion on January 12, 2022. (Doc. No. 23.)

## II. Standard of Review

Under 28 U.S.C. § 1441(a), defendants may remove a civil action from a state court only when the federal court has original jurisdiction over the claims alleged in the state court complaint. That is, any civil case filed in state court may be removed to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Absent jurisdiction based upon diversity of citizenship (28 U.S.C. § 1332), federal question jurisdiction under 28 U.S.C. § 1331 is required. *Caterpillar*, 482 U.S. at 392.

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Federal

courts are courts of limited jurisdiction and possess only the power authorized by the United States Constitution or by statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "'[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.'" *Eastman*, 438 F.3d at 549-50 (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996) (further citation omitted)).

Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law if: (1) "federal law creates the cause of action[,]" or (2) "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

The presence or absence of federal-question jurisdiction is generally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of her claims, and she may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425 (internal citation omitted). "Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for the purposes of removal." *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quoting *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003)).

The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Further, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and a defendant may not

[generally] remove a cause to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (internal citations and quotation marks omitted) (alteration and emphasis in original); *see also Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 704*, 25 F.3d 1308, 1313 (6th Cir. 1994) (defensive assertion of federal statute "does not raise a federal question for removal purposes").

**III.    Analysis**

Defendants argue that the PREP Act completely preempts Wimberly's state-law claim for willful misconduct and, accordingly, this action should not only be removed to federal district court but also transferred to the United States District Court for the District of Columbia. (Doc. No. 16, PageID# 134-42.) As set forth below, this Court finds that Wimberly's claims fall outside the scope of the PREP Act and, accordingly, must be remanded to state court. Therefore, this Court does not consider the complete preemption issue.

**A.    The PREP Act**

The PREP Act empowers the Secretary of the Department of Health and Human Services to "'to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency.'" *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709, 715 (M.D. Tenn. Apr. 21, 2021) (citing *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-cv-1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (citing 42 U.S.C. § 247d(a)); *see also* 42 U.S.C. § 247d(b)(1)). If the Secretary determines that a public health emergency exists, the Secretary may make a declaration recommending "manufacture, testing, development, distribution, administration, or use of one of more covered countermeasures" to combat the

emergency. 42 U.S.C. § 247-6d(b)(1). In March 2020, the Secretary declared SARS-CoV-2 and the resulting disease, COVID-19, to be a public health emergency under the PREP Act. *Bolton*, 535 F. Supp. 3d at 715.

The PREP Act provides that covered persons "shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The only exception to the PREP Act's immunity is willful misconduct claims. 42 U.S.C. § 247d-6d(d)(1) ("[T]he sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . ."). However, to fall under the PREP Act, a willful misconduct claim must still involve the "administration" or "use" of a "covered countermeasure." *See Singer v. Montefiore, et al.*, --- F. Supp. 3d, ---, 2021 WL 6111671, at *3 (N.D. Ohio Dec. 27, 2021) (appeal docketed 3/28/2022) ("Put another way, the path to the [willful misconduct] exception in subsection (d) of the statute runs through subsection (a), which requires ["administration" or "use" of] covered countermeasures."); *see also Rosen v. Montefiore, et al.*, --- F. Supp. 3d ---, ---, 2022 WL 278106, at *3 (N.D. Ohio Jan. 31, 2022) (appeal docketed 3/2/2022).

"Covered countermeasures" are defined as qualified pandemic or epidemic products, drugs and biological products authorized for emergency use, security countermeasures, and respiratory protective devices. *See* 42 U.S.C. § 247d-6d(i)(1). The Secretary's March 2020 declaration identified covered countermeasures to include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration

7

of any such product, and all components and constituent materials of any such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020).

### B. Wimberly's Claims Do Not Fall Under the PREP Act

In her Motion, Wimberly argues that none of her claims fall under the PREP Act, and therefore are not subject to federal subject matter jurisdiction, because she does not allege any injury related to the administration or use of a covered countermeasure. (Doc. No. 13, PageID# 69.) Wimberly argues that myriad other federal district courts have concluded that allegations of inaction or failure to provide adequate protection or countermeasures fall outside the PREP Act. (*Id.* at PageID# 71.) Wimberly argues that her allegations are no different. (*Id.*) She asserts that her allegations against Defendants, including Defendants' alleged failure to follow infection control and prevention protocols, ensure adequate staffing and testing procedures, and intentional falsification of COVID-19 test results, stem from the Defendants' "reckless failures and intentional wrongdoing," not their actions in administering a covered countermeasure. (*Id.*)

In their Opposition[1], Defendants argue that Wimberly's claims specifically relate to the PREP Act because she alleges that Wilson's injuries and death "were related" to Defendants' alleged willful falsification of Wilson's COVID-19 test results. (Doc. No. 16, PageID# 133.) Defendants contend that the PREP Act does not require that the use or administration of a covered countermeasure be the exclusive cause of death, but only that Wimberly's claims "relate to" the administration of a countermeasure. (*Id.*)

---

[1] Because Hyman's Opposition is substantively identical to the Facility Defendants' Opposition, all citations will be to the Facility Defendants' Opposition.

8

The Court concludes that none of Wimberly's claims fall under the PREP Act because Wimberly does not assert that her mother's death was "caused by, arose out of, related to, or resulted from" the "administration" or "use" of the identified "covered countermeasures." *See* 42 U.S.C. §§ 247d-6d(a), 247d-6d(d). First, to the extent Wimberly's claims are based on Defendants' failure to provide appropriate infection control and prevention measures, including by failing to provide medical services, provide appropriate staffing, and establish protocols and policies, as well as care standards for physicians and nurses, such claims fall outside the scope of the PREP Act. (*See* Doc. No. 1-2, ¶¶ 26-30.) Policies, procedures, protocols, and staffing assignments are not covered countermeasures. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020). *See also, e.g., Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3.

Second, Wimberly's claims are based on Defendants' inaction, not the "administration" or "use" of covered countermeasures. The Secretary defines "administration" of a covered countermeasure to mean the "*physical* provision of the countermeasures to recipients." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020) (emphasis added). Here, the crux of Wimberly's claims is that her mother died because Defendants *failed* to take reasonable steps to protect her mother, and other residents, by implementing infection control and prevention policies and procedures. Defendants' failure to act cannot be construed to be administration—i.e., physical provision—of any kind of covered countermeasure. *See, e.g., Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3 (concluding that the plaintiffs' claims were based on the defendants' failure to administer or use handwashing, masks, and testing devices, and therefore did not fall within the scope

9

of the PREP Act); *Dupervil v. Alliance Health Ops., LLC*, 516 F. Supp. 238, 255 (E.D.N.Y. 2021) (concluding that the defendants' alleged failures, including failing to take steps to separate residents, enforce social distancing, restrict visitors, ensure adequate staffing levels, enforce mask-wearing, and screening for COVID-19 symptoms among building entrants, "cannot be said to be administering— or even prioritizing or purposefully allocating—a drug, biological product, or device" such that they fall within the ambit of the PREP Act); *Winn v. Cal. Post Acute LLC*, 532 F. Supp. 3d 892, 899 (C.D. Cal. 2021); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 531 (D.N.J. 2020), *aff'd sub nom. Maglioi v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021) (observing that the PREP Act "is designed to protect those who employ countermeasures, **not those who decline to employ them**") (emphasis added); *Segel v. Sunray Healthcare Center*, No. CV 21-7468 DSF, 2021 WL 5755639, at *2 (C.D. Cal. Dec. 2, 2021) (appeal docketed 12/30/2021) ("The Plaintiff here complains, in part, of a *failure to use* covered countermeasures. If Defendants' argument were accepted, patients whose healthcare providers did nothing would have worse recourse to compensation than patients whose healthcare providers tried in good faith to apply covered countermeasures."); *Hopman v. Sunrise Villa Culver City*, No. 2:21-cv-01054-RGK-JEM, 2021 WL 1529964, at *5 (C.D. Cal. Apr. 16, 2021); *Shapnik v. Hebrew Home for the Aged at Riverdale*, 535 F. Supp. 3d 301, 322 (S.D.N.Y. Apr. 26, 2021).

Further, the Secretary made clear that only a narrow type of "inaction claim" is viable under the PREP Act: a "purposeful allocation" claim, wherein there are limited covered countermeasures available, and there was a failure to administer a covered countermeasure to one individual because it was administered to another individual. Fourth Amended Declaration, 85 Fed. Reg. 79190, 79,197 (Dec. 9, 2020). Here, there are no allegations that Wilson's death was the result of purposeful

allocation of personal protective equipment or care to other individuals. *See, e.g., Winn*, 532 F. Supp. 3d at 899.

Moreover, falsifying COVID-19 test results is not the "administration" or "use" of a covered countermeasure. *See Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3 (concluding same). Nor is intentionally obscuring the number of active COVID-19 cases at the facility to hide a COVID-19 breakout within the facility the "administration" or "use" of a covered countermeasure. Though Wimberly's allegations regarding Defendants' falsification of test results references COVID-19 tests, Wimberly does not allege that Defendants injured her mother by physically providing her a COVID-19 test. Rather, Wimberly's allegations revolve around Defendants' (alleged) decision to suppress accurate COVID-19 case counts and falsify test results, misleading residents and their families. Indeed, it is irrelevant whether any COVID-19 tests were physically provided in the first place because, according to Wimberly's Complaint, Defendants' test results were intentionally faked and entirely unrelated to the actual test result. Thus, it cannot be said that Defendants' fake test results "related to" the administration of a covered countermeasure. The Court agrees with the *Rosen* court that "[t]his is not conduct contemplated within the scope of the Act." *Id.*

Finally, the Court is unpersuaded by Defendants' assertion that Wimberly's claims "relate to" the administration of a covered countermeasure because she "explicitly alleges" in paragraphs 17 and 29 of the Complaint that Wilson's injuries and death "were related to the willful falsification and/or *improper use* of COVID-19 diagnostic tests administered by Defendants to Decedent . . . ." (Doc. No. 16, PageID# 133, emphasis added.) Contrary to Defendants' assertion, Wimberly does not allege the "*improper use*" or "*administration*" of COVID-19 diagnostic tests. (*Id.*, emphasis added.) Wimberly does *not* allege anywhere in her Complaint that her mother was injured due to Defendants' improper

11

"administration" or "use" of a COVID-19 test. The Secretary defines "administration" of a covered countermeasure to mean the "*physical* provision of the countermeasures to recipients." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020) (emphasis added). As Wimberly argues in her Reply to the Facility Defendants' Response to Supplemental Authority, "[t]he Defendants did not injure or kill someone by swabbing their nose with a PCR test," or otherwise injure Wilson due to Defendants' physical provision of a COVID-19 test. (Doc. No. 23, PageID# 221-22.)

Rather, Wimberly's allegations in paragraphs 17 and 29 are broader than Defendants make them out to be. Wimberly alleges that Defendants "conducted improper testing":

> 17. Montefiore and the Defendants, however, had been negligently, recklessly, and with malicious intent improperly implementing SARS-COV2 and/or any other form of Covid-19 or Covid-19 related illness prevention measures. **Moreover, they were negligently, recklessly, and with malicious intent conducting improper testing and falsifying tests.** They intentionally hid the fact that other patients and/or residents of Montefiore had SARS-COV2 and/or any other form of Covid-19 or Covid-19 related illness.
>
> . . .
>
> 29. Defendants recklessly and with malicious intent improperly implemented SARS-COV2 related illness preventing measures **and conducted improper testing and falsifying tests** and further hid the fact that other patients had been exposed to SARS-COV2.

(Doc. No. 1-2, ¶¶ 17, 29, emphasis added.) The word "conduct" means "to direct or take part in the operation or management of; to direct the performance of; to lead from a position of command." *Conduct*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/conduct (last visited 4/13/2022). In other words, Wimberly alleges that Defendants directed, managed, and/or led improper COVID-19 testing efforts, including by intentionally falsifying test results to hide their facility's burgeoning COVID-19 case numbers. This Court declines to construe Wimberly's

12

allegations that Defendants, "with malicious intent", "conducted improper tests" to mean that Defendants acted with malicious intent in the actual administration or use of a nasal or cheek swab on any given person, including Wimberly's mother. Rather, the Court construes these allegations to be part and parcel of Wimberly's allegations that Defendants directed or managed an intentional effort to falsify and hide positive COVID-19 test results from residents to obscure the COVID-19 outbreak coursing through the facility.[2]

Accordingly, the Court concludes that Wimberly's claims do not fall within the scope of the PREP Act and, therefore, are not subject to federal question jurisdiction under § 1331 because they do not relate to the administration or use of covered countermeasures. Because the Court concludes that Wimberly's claims do not fall within the PREP Act, the Court does not consider the complete preemption issue.

### C. Federal Officer Removal

Under 28 U.S.C. § 1442(a), certain officers of the United States may remove actions to federal court. 28 U.S.C. § 1442(a). To do so, the officer-defendant must first establish he is a person within the meaning of the statute who "act[ed] under [a federal] officer[.]" *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (internal quotations omitted). Second, he must also establish that he "performed the actions for which [he] is being sued under color of [federal] office[.]" *Id.* (internal quotations omitted). Finally, he must show that he "raised a colorable federal defense." *Id.* Private parties may invoke the federal officer removal statute if they can demonstrate that they satisfy these requirements. *Id.*

---

[2] Moreover, Wimberly's allegations that Defendants "conducted improper testing" are virtually identical to "improper testing" allegations found in the complaints at issue in *Rosen v. Montefiore, et al.*,. *See* Rosen Compl., ¶¶ 22, 34; Connor Compl., ¶ 16, *Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3.

First, the Facility Defendants, King, and Gelle plainly did not raise § 1442(a) as a ground for removal. (*See* Doc. No. 1.) They may not raise a new substantive ground for removal in opposing Wimberly's Motion for Remand. *See Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio Aug. 15, 2008) ("A defendant cannot argue a new substantive ground as a basis for removal in opposing remand.").

Second, to the extent that Hyman raised § 1442(a) as a ground for removal,[3] his argument is not well-taken. Hyman asserts that he acted under federal authority in responding to the COVID-19 pandemic as an employee of a nursing home that participates in the Medicare and Medicaid programs. (Doc. No. 16, PageID# 143.) This assertion lacks merit. Hyman cannot show that he acted under federal authority within the meaning of the removal statute. *See Maglioli*, 16 F.4th at 404 (holding that nursing home defendants could not seek removal based on federal officer removal statute). At most, Hyman complied with regulations and orders promulgated by CMS during the pandemic. He is not a government contractor, is not delegated federal authority, and did not provide any service that the federal government would otherwise provide. *See Singer*, --- F. Supp. 3d at ---, 2021 WL 6111671, at *7; *Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *5 (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *In re Commonwealth's Motion to Appoint Couns. Against or Directed*

---

[3] It is unclear whether Hyman properly raised § 1442(a) as a ground for removal. First, Hyman's sole mention of § 1442(a) in his Notice is nearly impossible to parse:

> This case is removable under 28 U.S.C.A. § 1441(a) on the basis of 'original jurisdiction' because Plaintiff's Complaint asserts a claim 'arising under' federal law within the meaning of § 1331. **Original jurisdiction is also through an action pursuant to 28 U.S.C. §1442(a)(1).** The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

(*Id.* at ¶ 12, emphasis added.) Further, Hyman offers no further argument regarding federal officer removal jurisdiction in his Notice. (*Id.*) Second, the Facility Defendants already removed this case **three days** prior to Hyman's removal, **with Hyman's consent.** (Doc. No. 1, ¶ 12, ". . . Defendants Ariel S. Hyman, Tina King, and Marie Gelle consent to removal of this action to the United States District Court for the Northern District of Ohio, Eastern Division.") Thus, Hyman's consent to the 11/5/2021 removal implies that he consented to removal on the basis of federal question jurisdiction *only*.

14

to Def. Ass'n of Philadelphia, 790 F.3d 457, 469 (3d Cir. 2015); Bennett, 607 F.3d at 1089)); Hudak v. Elmcroft of Sagamore Hills, et al., --- F. Supp. 3d ---, ---, 2021 WL 7966603, at *13 (N.D. Ohio Aug. 19, 2021); Segel, 2021 WL 5755639, at *1.  Therefore, Hyman may not remove this case to federal court under § 1442(a).

### D. Defendants' Motion for Leave to File Declaration *Instanter*

On December 29, 2021, Wimberly filed a Notice of Supplemental Authority, directing the Court's attention to a recently issued decision in a substantially similar consolidated case against these same Defendants, *Singer v. Montefiore, et al.* (Doc. No. 21.)  The *Singer* court concluded that the plaintiffs' state-law claims should be remanded because the defendants failed to "place[ ] sufficient information in the record from which the Court can determine that these countermeasures meet the statutory definition or the Secretary's emergency declaration." *See Singer*, --- F. Supp. 3d at ---, 2021 WL 6111671, at *6.  The Facility Defendants filed a Response to Plaintiff's Notice of Supplemental Authority, and Motion for Leave to File Declaration *Instanter*, seeking to file a declaration from former Montefiore Chief Operating Officer Richard Schwalberg to confirm that all facility COVID-19 tests were FDA-authorized. (Doc. No. 22, PageID# 215.)

The Court's rationale for remanding Wimberly's Complaint is different from that of the *Singer* court.  Therefore, the Facility Defendants' proposed declaration is irrelevant to the Court's analysis and resolution of the pending Motion for Remand.  Accordingly, the Facility Defendants' Motion for Leave is denied.

IV. **Conclusion**

For the reasons set forth above, Wimberly's Motion for Remand is GRANTED.  The Facility Defendants' Motion for Leave to File Declaration *Instanter* is DENIED.  The case is REMANDED to the Court of Common Pleas of Cuyahoga County, Ohio, from which it was removed.

**IT IS SO ORDERED.**

Date: April 14, 2022

*s/ Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE